# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 252 | **DATE** | 2/18/2003 |
| **CASE TITLE** | Archietta Shannon vs. Michael F. Sheahan | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due ____ .

(3) ☐ Answer brief to motion due _____ . Reply to answer brief due _____ .

(4) ☐ Ruling/Hearing on ____ set for ____ at ____ .

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ____ set for _____ at _____ .

(7) ☐ Trial[set for/re-set for] on _____ at _____ .

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter Memorandum Opinion And Order. The court finds no genuine issue of material fact regarding Shannon's claims under the ADA or Title VII and grants summary judgment (Doc. No. 24-1) for Defendant on all Plaintiff's claims.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | **Document Number** |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | **FEB 2 0 2003** | | |
| | Notified counsel by telephone. | | date docketed | | 39 |
| | Docketing to mail notices. | | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | 2/18 | date mailed notice | |
| ETV | courtroom deputy's initials | | | ETV | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

ARCHIETTA SHANNON,                    )
                                      )
          Plaintiff,                  )
                                      )
     v.                               )    No. 01 C 252
                                      )
MICHAEL SHEAHAN,                      )    Judge Rebecca R. Pallmeyer
SHERIFF OF COOK COUNTY,               )
                                      )
          Defendant.                  )

## MEMORANDUM OPINION AND ORDER

On January 12, 2001, Plaintiff Archietta Shannon ("Shannon") filed this lawsuit against her former employer, the Sheriff of Cook County, alleging retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq.* Specifically, Shannon alleges that she was suspended without pay for filing complaints of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR"). In addition, Shannon invokes the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, alleging that she was discriminated against based on her disability, rheumatoid arthritis, and that Defendant failed to accommodate her disability. Defendant moves for summary judgment on each of Plaintiff's claims.

For the reasons set forth below, Defendant's motion is granted.

## FACTUAL BACKGROUND[1]

Plaintiff, a resident of Chicago, began working for the Cook County Sheriff's Department ("Department") in June 1987 as part of the court services branch. (Defendant's Statement of

---

[1] The court compiled the facts for this section from the parties' Local Rule 56.1(a)(3) and (b)(3) Statements of Material Facts and attached exhibits. As described below, these statements reflect a number of factual disputes between the parties. Defendant has also made a number of objections to assertions in Plaintiff's 56.1 Statement. Many of these objections are valid. As explained repeatedly, statements of material fact must contain allegations of fact and not legal conclusions; include material facts; and be supported by admissible (non-hearsay) evidence. *Malec v. Sanford*, 191 F.R.D. 581, 583-85 (N.D. Ill. 2000). Plaintiff's 56.1 Statement fails these tests. For example, Shannon denies a number of the factual allegations asserted in Defendant's 56.1 Statement without supporting her denial with admissible evidence in the record. (*see, e.g.,* Plaintiff's Response to Defendant's Statement of Facts, (hereinafter, "Pl.'s Response"), ¶¶ 3, 4, 7, 8, 20, 22, 28, 30, 33.) Where Plaintiff's denials are unsupported, the court has disregarded them and accepted Defendant's assertions as admitted.

Uncontested Facts Pursuant to Local Rule 56.1, ¶ 2) (hereinafter, "Def.'s 56.1.")    Defendant Michael F. Sheahan has been the Sheriff of Cook County at all times relevant to this lawsuit. (*Id.* ¶ 1.)  On August 29, 1995, Plaintiff was assigned as a courtroom deputy to a courtroom in the Daley Center.  (Plaintiff's Statement of Additional Facts, ¶ 1) (hereinafter, "Pl.'s 56.1.")    It is undisputed that essential functions for the courtroom deputy position include maintaining the security of the courtroom and ensuring the safe transportation of prisoners to and from the courthouse.  (Def.'s 56.1 ¶ 28.)  In addition to her duties as a courtroom deputy, Shannon also served as a union steward from 1987 to 1995, which required her to assist fellow deputies with management disputes.  (Pl.'s 56.1 ¶ 7.)

## Shannon's Disability

On August 30, 1995, Shannon slipped on the floor at work, injuring both her right ankle and right knee.  (Def.'s 56.1 ¶ 21.)  Shannon did not return to work as a result of this injury until March 15, 1996, (*id.* ¶ 26), in spite of the fact that, according to Defendant, on September 22, 1995, Dr. Burzinski recommended Shannon return to work with only three weeks light duty.[2]  (Physician's Approval to Return to Work,  Ex. 17 to Def.'s 56.1.)  Dr. Burzinski also placed work restrictions on Shannon's employment activities during this light duty period, including: no prolonged sitting or standing, and no contact with prisoners.  (Def.'s 56.1 ¶ 22; Physician's Approval to Return to Work, Ex. 17 to Def.'s 56.1.)  Although some of these work restrictions were lifted (the parties do not say when), Shannon was restricted to a sitting position for the remainder of her employment with the Department.  (Pl.'s 56.1 ¶ 5.)  Shannon maintains that the knee injury substantially limited her ability to walk, (Pl.'s Decl. ¶ 3), and required her to take medications that made her incontinent. (Pl's 56.1 ¶ 6.)

---

[2]    The parties do not provide Dr. Burzinski's first name or explain how Shannon came to consult with Dr. Burzinski.

On January 16, 1996, while Shannon was still on leave from her injury, she had arthroscopic surgery on her injured right knee. (Def.'s 56.1 ¶ 23.) The surgery was performed by Dr. Silver, a doctor Shannon claims Defendant required her to consult, (Pl.'s Decl. ¶ 5), and was unsuccessful; Shannon remains unable to walk without the assistance of a cane or walker. (Pl.'s 56.1 ¶ 4.) Shannon also remains unable to perform many of the essential job functions required of a deputy sheriff in court services; she is unable to transport prisoners, provide security for the courtroom, travel up and down escalators, sit at the front desk and search people as they come through the metal detectors, or make arrests. (Def.'s 56.1 ¶ 29.) Plaintiff remains capable of performing only one function of deputy sheriff: entering warrant information into a computer.[3] (*Id.* ¶ 30.)

Following the January 1996 surgery, Dr. Silver prescribed physical therapy for Shannon's knee and performed follow-up evaluations. (Pl.'s Decl. ¶ 5.) In the next three months, Defendant claims that Shannon's condition improved to the point where she had increased range of motion, no clicking or popping in her right knee, and no swelling. (March 27, 1996 Letter from Dr. Ronald L. Silver to Pamela McConnell with Medical and Rehabilitation Management, Ex. 19C to Def.'s 56.1.) Although Shannon admits that she was cleared to return to work, she was restricted to limited walking and standing. (The Humana Health Care Plan Return to Work/School Verification, Ex. 3 to Pl.'s 56.1, at 5.)

Plaintiff consulted with at least two other physicians following her surgery. On an undetermined date she sought out her previous and preferred physician, Dr. McClellan, who prescribed cortisone shots and more physical therapy. (Pl.'s Decl. ¶ 5.) Shannon found this treatment regime beneficial and continued seeking treatment from Dr. McClellan until she was

---

[3]    Shannon denies that entering warrant information is the only task she can perform as a deputy sheriff but does not support this assertion with evidence in the record.    (Pl.'s Response, ¶ 30.) Nor has Shannon identified any other functions she can perform. (*Id.*) The court therefore deems Defendant's statement admitted. *Rosemary B. v. Board of Education of Community High Sch. Dist. No. 155,* 52 F.3d 156,158-59 (7th Cir. 1995).

3

discharged from the Department and her insurance was terminated.[4] (*Id.*) In addition, on July 16, 1996, Shannon consulted another doctor, Dr. George Bridgeforth, who diagnosed degenerative arthritis of both knees. (Dr. Bridgeforth's Rheumatology Evaluation, Ex. 3 to Pl.'s 56.1, at 2.) In his examination report, Dr. Bridgeforth indicated that Shannon had more than a 50 percent reduced capacity in performing her daily physical activities, such as walking, bending, turning, climbing, stooping, pushing and pulling.[5] (*Id.*)

## Shannon's First Discharge from the Sheriff's Department

On March 14, 1996, the day before Shannon returned to work from her knee injury, she was discharged by the Department's Merit Board based on three complaints of misconduct, which had occurred in May and July 1995.[6] (Def.'s 56.1 ¶ 33; Merit Board Case Nos. 990-92, Ex. 28 to Def.'s 56.1; March 14, 1996 Cook County Sheriff's Merit Board Order, (hereinafter "1996 Merit Board Order"), Ex. 29 to Def.'s 56.1.) The Merit Board records reflect that these complaints were based on three incidents: (a) on May 5, 1995 Shannon failed to obey three direct orders from Sergeant Orr in the Daley Center; (b) on May 11, 1995, Shannon failed to follow a direct order from Sergeant Kingman, also in the Daley Center; and (c) on July 7, 1995, Shannon improperly accessed the Child Support Courthouse, at 32 West Randolph Street, to review a case file pertaining to a lawsuit in which she was a party. (Merit Board Case Nos. 990-92, Ex. 28 to Def.'s 56.1; *Shannon v. Cook County Sheriff's Merit Board, et al.*, 96 CH 3626 (Ill. App. Ct. July 22, 1997) The Merit Board heard

---

[4]    Shannon does not provide the exact date her insurance was terminated, but the court notes that, according to Defendant, she was discharged by the Department on April 15, 1998. (Merit Board Order, Ex. 14 to Def.'s 56.1.)

[5]    The record is unclear regarding whether this report was provided to Defendant.

[6]    Defendant does not explain the cause for the delay between Shannon's misconduct, in May and July 1995, and her termination on March 14, 1996. The court notes, however, that the three Merit Board Complaints were filed on October 10, 1995 and presumes that an investigation was conducted prior to the filing of these complaints. (Merit Board Case Nos. 990-92, Ex. 28 to Def.'s 56.1.)

evidence on these claims, ultimately determined that Shannon had violated Department regulations as set forth in the complaints, and ordered her terminated. (1996 Merit Board Order, Ex. 29 to Def.'s 56.1.) On March 15, 1996, Plaintiff returned to the Department from injury leave, unaware of her termination the previous day, and went through the employee intake process, only to be advised by an unnamed Department employee that she had been terminated. (Pl.'s 56.1 ¶ 11(a).)

This termination, however, was not the conclusion of Shannon's employment with the Sheriff's Department. Shannon's March 14, 1996 termination was reversed by the Circuit Court of Cook County in October 1996.[7] (Pl.'s 56.1 ¶ 11(b).) As explained below, she returned to work the following month. (*Id.* ¶ 11(c).) Defendant appealed the Circuit Court decision, however, and on July 22, 1997, that decision was reversed, with the result that Shannon's termination was reinstated, effective March 14, 1996. (Def.'s 56.1 ¶ 33.) Shannon sought leave to appeal to the Illinois Supreme Court, but the court denied her petition on December 3, 1997. (December 3, 1997 Letter to Plaintiff from Illinois Supreme Court, Ex. A to Def.'s Reply Memorandum in Support of Motion for Summary Judgment) (hereinafter, "Def.'s Reply.") On December 16, 1997, Shannon obtained a stay of the Illinois Supreme Court's mandate while her petition for certiorari in the United States Supreme Court was pending. (December 16, 1997 Order of Illinois Supreme Court, No. 1-96-3571, Ex. C to Def.'s Reply.) She filed her certiorari petition with the United States Supreme Court on March 9, 1998.[8] (Petition for Writ of Certiorari, Exhibit D to Def.'s Reply.) Notably, even after July 22, 1997 when the Illinois Appellate Court issued its order reinstating her March 14, 1996 termination, Shannon remained on the Department's payroll. (Pl.'s 56.1 ¶ 14.)

---

[7] It is undisputed that the court reversed the termination decision, but the parties do not provide a copy of the order from the Cook County Circuit Court or the exact date the order was issued.

[8] Although Defendant provided a copy of Plaintiff's petition, neither side has provided information concerning the Court's disposition of the petition. This court presumes it was denied.

5

**Shannon Returns to the Department**

In November 1996, one month after the Circuit Court's reversal of Shannon's termination by the Merit Board, Shannon returned to work at the Department. (*Id.* ¶ 11(c).) Upon her return, Shannon asserts, Defendant "refused to give Shannon her credentials back", "eliminated Shannon's seniority, dropp[ed] her pay grade, revok[ed] her accrued days off, . . . revok[ed] her insurance and pension benefits" and "dedeputized her." (*Id.* ¶¶ 11(e), 11(f), 11(c).) She was also replaced as union steward. (*Id.* ¶ 11(c).)

Defendant assigned Shannon a new sedentary position, which Defendant claims accommodated her physical restrictions, (March 8, 1996 Letter from Charles Tucker to Plaintiff, Ex. 23 to Def.'s 56.1.), recording deliveries in the freight tunnel of the County Building while seated at a desk.[9] (Pl.'s 56.1 ¶ 9.) Shannon started this new position when she returned to the Department in November 1996. (Pl.'s 56.1 ¶ 11(c).) Shannon found her new assignment "humiliating" because she did not feel it was a "real position"; she was responsible for helping a deputy enter delivery information into a notebook, a job that had previously been performed by one person. (Pl.'s Decl. ¶ 11.) In addition, Shannon objected to the location of her new position; she was stationed in the freight tunnel of the County Building, in close proximity to the garbage dumpsters, which exacerbated the nausea that resulted from her prescribed medications. (*Id.*) According to Shannon, Defendant also prohibited her from using the bathroom closest to her duty station, instead requiring her to use a bathroom that was a great distance away.[10] (*Id.* ¶ 12.) She often

---

[9]    According to Defendant, this position was first created for Shannon's return on March 15, 1996, (March 8, 1996 Letter from Charles Tucker to Plaintiff, Ex. 23 to Def.'s 56.1), but because she was terminated the previous day, she did not assume the duties of this position until her return in November 1996.

[10]    Defendant objects to this assertion on the basis that it is conclusory and not supported by admissible evidence, but fails to explain why this assertion is conclusory or inadmissible. In addition, Defendant does not deny the allegation or provide an explanation. The court is troubled by the absence of an explanation regarding these allegations. The court believes,

(continued...)

soiled herself making this long walk because of her difficulty walking and her medications that made her incontinent. (*Id.*) It is undisputed that Defendant denied Shannon a transfer to the warrant department, a position she held previously, because Defendant had already created a position for her in the freight tunnel of the County Building. (Pl.'s 56.1 ¶ 11(d).) Plaintiff does acknowledge, however, that this new position allowed her to keep her leg elevated and that she was provided transportation to and from work while she held this position.[11] (Plaintiff's Deposition, (hereinafter, "Pl.'s Dep."), Ex. 24 to Def.'s 56.1, at 76-81.)

Shannon claims that her new supervisor, Chief Loretta Collins[12], (Pl.'s 56.1 ¶ 9), wanted her terminated because Shannon had "filed a request for injured on disability after Chief Collins bumped her in her office during a disagreement; . . . reported Chief Collins to the County for her misuse of a County vehicle; and . . . reported Chief Collins to the County for her falsification of time sheets."[13] (Pl.'s Decl. ¶ 18.) Shannon asserts that she was told by three deputies, Dwayne Morehead, George Anderson and Earnest Ford, that they had heard Chief Collins request Shannon

---

[10](...continued)
if true, such behavior by Defendant is repugnant and served only to embarrass and torment Plaintiff.

[11]     Plaintiff admitted that she was provided transportation to and from work, but she was uncertain whether this service was provided by Cook County or the City of Chicago. (Pl.'s Dep., Ex. 25 to Def.'s 56.1, at 81.) Plaintiff does not explain why the City of Chicago would arrange for the transportation of a County employee.

[12]     The parties do not provide Loretta Collins' full title at the Department.

[13]     Shannon does not state when these events took place. In addition, Shannon does not provide any support for these incidents other than her own declaration, nor has Shannon described the results, if any, of her reporting that Chief Collins allegedly misused a County vehicle and falsified time sheets. In an attempt to support her assertion that Collins wanted her terminated, Shannon provides one page from the deposition of James A. White, in which he states that Shannon and Collins had a "little confrontation." (James A. White Dep., Ex. 10 to Pl.'s 56.1, at 52.) Although the court presumes White is employed by the Department, Shannon has not provided his title, how and when he came to learn of the alleged friction between Shannon and Collins, or when the confrontation between Collins and Shannon occurred. (*Id.*) Nor did Shannon cite to White's deposition in her 56.1 Statement.

7

be written up "for anything and everything."[14]  (Pl.'s Decl. ¶¶ 19-20.)

Without specifying the charges or the exact date, the parties agree that in November 1996 (presumably within a few days of her return to work in the wake of the Circuit Court's decision), Plaintiff filed a charge of discrimination with the IDHR and the EEOC.[15]  (Pl.'s 56.1 ¶ 8.)

**Plaintiff's Suspension and Termination**

On June 17, 1997, Shannon was sent home from work and suspended with pay pending the Department's Internal Affairs Division investigation regarding two complaints of misconduct that allegedly took place on January 7 and June 12, 1997.[16]  (Defendant's 56.1 ¶ 4; June 17, 1997 Memorandum from Robert Goldsmith, Director Internal Affairs, to Shannon, Ex. 3 to Def.'s 56.1.) The parties agree that Chief Collins, Shannon's supervisor, filed one of the complaints, though they do not identify which one. (Pl.'s 56.1 ¶ 12.)

The first complaint alleged that on January 7, 1997, Shannon violated a Department regulation by refusing to honor a deputy's request to surrender her expired identification card and failing to follow a superior officer's order to do the same. (Id. ¶ 12a.) Defendant claims that a deputy sheriff, Victoria Haig, asked Shannon for her expired identification card when she tried to

---

[14]     Shannon does not identify the date on which Collins allegedly made this statement, nor the date on which the deputies allegedly informed her of Collins' request. Furthermore, Plaintiff describes these three alleged statements in her own declaration, (Pl.'s Decl. ¶¶ 19, 20), but neither Morehead, Anderson, nor Ford has supplied an affidavit or given a deposition as part of this litigation. Defendant moves to strike these assertions from the Plaintiff's 56.1 Statement as inadmissible hearsay. Although "evidence supporting a factual contention need not be admissible itself, it must represent admissible evidence." *Malec,* 191 F.R.D. at 585.   Because these allegations concerning Collins' alleged statements to third parties are based on inadmissible hearsay the court will not rely on them in deciding this motion.

[15]     Neither party has provided a copy of this charge or described Shannon's allegations.

[16]     Plaintiff denies this assertion but does not provide a cite to the record to rebut it or an explanation as to why the assertion is inaccurate. As stated previously, where a denial is unsupported, the court will deem Defendant's assertion admitted. The court notes, however, that Defendant does not explain the delay between Shannon's January 7, 1997 misconduct and the June 17, 1997 suspension.

use it to enter the Daley Center. (Merit Board Complaint, Ex. 6 to Pl.'s 56.1, at 2; Investigation Summary Report, Ex. 6 to Pl.'s 56.1, at 16-17.) When Shannon refused, Haig informed Sergeant Randy Rodriguez, who then ordered Shannon to surrender the identification card, an order, Defendant alleges, Shannon failed to obey. (Merit Board Complaint, Ex. 6 to Pl.'s 56.1, at 2.) For her failure to relinquish the card, she was accused of insubordination and failure to respect a fellow deputy. (Id.) Plaintiff denies that she violated the regulation, and insists that she did promptly surrender the card as ordered.[17] (Pl.'s Decl. ¶ 16.) In addition, she claims that she was being harassed by the deputy for no apparent reason; she asserts she had passed the area many times without showing an identification card. (Id.)

The second complaint alleged that on June 12, 1997, Shannon violated a Department regulation by plugging her personal telephone into a County telephone line. (Pl.'s 56.1 ¶12(b).) Although Shannon admits bringing a phone to work, she claims that the phone was taken away before she could plug it into the County phone line.[18] (Pl.'s Decl. ¶ 17.) Shannon claims that she was forced to bring a phone to work because another employee removed her work phone anytime he left the area and she did not want to be left at a security position without a phone. (Id.)

On June 17, 1997, Robert Goldsmith, Director of Internal Affairs, suspended Shannon with pay pending an Internal Affairs investigation into the charges of misconduct.[19] (Def.'s 56.1 ¶ 4;

---

[17]     Although Shannon cites only her own declaration as support for her version of the events, the Investigation Summary Report, related to the charges against her, also supports the conclusion that Shannon did ultimately surrender the card, after first arguing with Rodriguez regarding her right to keep the card. (Investigation Summary Report, Ex. 6 to Pl.'s 56.1, at 17.)

[18]     Shannon again does not cite the Investigation Summary Report, but the court finds some support for this assertion in that document. (Investigation Summary Report, Ex. 6 to Pl.'s 56.1, at 735.)

[19]     Plaintiff denies this assertion but does not provide a cite to the record to rebut the assertion. As stated previously, this court will deem such unsupported denials as stricken. Shannon argues that Defendant himself failed to support his assertion with admissible evidence, but the court notes that Defendant in fact did cite a memorandum in the record which expressly
(continued...)

June 17, 1997 Memorandum from Robert Goldsmith, Director of Internal Affairs, to Shannon, Ex. 3 to Def.'s 56.1.) Brian Flaherty, Defendant's Personnel Director, stated that although he was certain that Shannon was suspended for the events that took place on January 7 and June 12, 1997, he was unable to remember why June 17, 1997 was the date selected for the suspension. (Flaherty Dep., Ex. 9 to Pl.'s 56.1, at 24.) It is undisputed that Defendants did not wait until the conclusion of the Internal Affairs investigation to impose the suspension; both sides agree that Defendant did not begin to investigate the charges of misconduct until June 18, 1997. (Pl.'s 56.1 ¶ 13; Investigation Summary Report, Ex. 6 to Pl.'s 56.1.) Between June and September 1997, investigators Renkas and Hull, on behalf of Defendant, completed six interviews and an investigative report. (Id.; Investigation Summary Report, Ex. 6 to Pl.'s 56.1, at 14-21.) Although there is no support in the record, the parties agree that in early September an unnamed representative of Defendant submitted a recommendation that Shannon be terminated.[20] (Pl.'s 56.1 ¶ 13.) The record is also unclear as to who in the Department received this recommendation for termination.

On June 19, 1997, Plaintiff filed another charge of discrimination, number 1997CF3177, with the IDHR alleging that her suspension of June 17, 1997 was a retaliatory act by Defendant in response to her previous discrimination charge, number 1997CF1226, filed in November 1996. (Id. ¶ 6.) On October 2, 1997, Plaintiff filed case 97 C 6910 in the United States District Court, alleging that Defendant failed to reasonably accommodate her disability, polyneuropathy in her right

---

[19](...continued)
states that Shannon was sent home pending an Internal Affairs investigation.

[20]    Shannon complains that Defendant is unable to identify when the decision to terminate her was made, but the portion of the record cited by Plaintiff does not support this assertion. Defendant, on the other hand, has supplied a copy of the April 15, 1998 Merit Board Order that terminated Shannon's employment with the Department, effective back to October 16, 1997, which, as explained below, was the date Shannon's paid suspension was converted to suspension without pay. (April 15, 1998 Merit Board Order, Ex. 14 to Def.'s 56.1.)

knee, resulting from her August 1995 accident. (Def.'s 56.1 ¶ 31; *Shannon v. Cook County Sheriff's Merit Board*, No. 97 C 6910, 1998 WL 171782, at *1 (N.D. Ill. April 10, 1998).) In her complaint, Shannon acknowledged Defendant had assigned her to a sedentary position, but claimed that Defendant was required to provide a further accommodation by assigning her to a courtroom deputy position. *Shannon*, 1998 WL 171782, at *3. On April 10, 1998, Judge Andersen granted Defendant's motion to dismiss Shannon's ADA claim without prejudice because she "plead[ed] herself out of her ADA claim," stating that the ADA only requires a reasonable accommodation and does not require Defendant to grant Shannon's "request for a particular job." *Id.* On April 28, 1998, Shannon appealed Judge Andersen's decision and on October 23, 1998, the decision was affirmed by the Seventh Circuit Court of Appeals. *Shannon v. Sheahan*, 165 F.3d 33 (TABLE, Text in WESTLAW), No. 98-2075, 1998 WL 764440 (7th Cir. Oct. 23, 1998).

The parties agree as to how the disciplinary procedure operates in the Department, but Shannon disputes that Defendant adhered to the normal procedure in her case. According to Defendant, the charges against Shannon were investigated and a *Loudermill* [21] hearing was held on October 16, 1997. [22] (Def.'s 56.1 ¶ 13; October 16, 1997 Memorandum from Chief Deputy Sheriff Robert Beavers to James Ryan, legal assistant to the Defendant, Ex. 9A to Def.'s 56.1; October 27, 1997 Letter from Robert Goldsmith to Shannon, Ex. 9B to Def.'s 56.1.) Both sides agree that the purpose of this initial hearing was two-fold: to determine if there is enough evidence to hold a Merit Board hearing on the charges and if so, whether an employee should be suspended without pay pending the hearing. (Def.'s 56.1 ¶ 9.) At the *Loudermill* hearing on October 16, 1997, the *Loudermill* Board decided that sufficient evidence existed to go forward with a Merit Board

---

[21]  In *Cleveland Board of Ed. v. Loudermill*, 478 U.S. 532, 105 S.Ct. 1487 (1985), the Supreme Court recognized the right of a public employee to notice and an opportunity to be heard before termination.

[22]  Plaintiff again denies Defendant's assertion without supporting this denial with evidence in the record.

hearing and that Shannon should be suspended without pay. (*Id.*) On October 21, 1997, the Merit Board Complaint, number 1118, was filed against Shannon. (Def.'s 56.1 ¶ 14.) According to Defendant, on October 27, 1997, Goldsmith mailed Shannon a notice informing her of this change in her pay status.[23] (October 27, 1997 Letter from Robert Goldsmith to Shannon, Ex. 9B to Def.'s 56.1.) At the Merit Board hearing, which takes place subsequent to the *Loudermill* hearing, the deputy sheriff accused of misconduct is provided a "full opportunity to be heard in his or her own defense and to produce proof in his or her defense."[24] (Def.'s 56.1 at 12; 5/3 ILCS 7012, Ex. 8 to Def.'s 56.1.) Plaintiff was not present at the *Loudermill* hearing and denies being provided fair notice or an opportunity to be heard regarding the charges against her at the hearing. (Pl.'s Decl. ¶ 26.) She further denies receiving any notice regarding her change in pay or that a Merit Board complaint had been filed against her. (*Id.*)

On October 22, 1997, Plaintiff and an unnamed representative of the Defendant attended a fact-finding conference at the IDHR on Shannon's second charge of discrimination, case number 1997CF3177. (Def.'s 56.1 ¶ 15.) The parties dispute what transpired at this meeting. Shannon claims Defendant informed her at the conference that she had been terminated, (Pl.'s Decl. ¶ 26), but this allegation is slightly at odds with her own third charge of discrimination, number 1998 CF1175, filed on November 11, 1997. (Charge of Discrimination, 1998CF1175, Ex. 2 to Def.'s 56.1.) In that November 11, 1997 charge, which is the underlying charge in this lawsuit, Shannon alleged, first, that Defendant retaliated against her for filing a charge of discrimination on June 19, 1997 by changing her suspension from paid to unpaid. (*Id.*) Specifically, she alleged that at the fact finding conference on October 22, 1997, Defendant's representative informed her that her

---

[23]     Defendant does not explain the 11-day delay in notifying Shannon of her change in pay status.

[24]     Shannon claims that she was not provided notice or an opportunity to be heard, but does not deny the asserted purpose of the Merit Board hearing.

suspension was being altered from paid to unpaid status. (*Id.*) The second claim in the November 11, 1997 charge is that Defendant discriminated against Plaintiff based on her disability by changing her pay status. (*Id.*) On an undetermined date, the IDHR dismissed Plaintiff's charge 1998CF1175 for lack of substantial evidence. (IDHR's Investigation Report regarding 1998CF1175, Ex. 15 to Def.'s 56.1.)

In responding to an IDHR questionnaire pertaining to Shannon's charge of discrimination, 1998CF1175, Defendant stated that at the time of Shannon's suspension, there were no other Sheriff Department employees engaged in similar conduct to that of Plaintiff; that Shannon was the only employee sent home with pay during the previous twelve month period; that her job performance was not a problem at the time of her suspension; and that Defendant did not keep a list of employees suspended without pay.[25] (Respondent's Answers to IDHR Questionnaire, Ex. 5 to Pl.'s 56.1, at 5-6.)

According to Defendant, on December 19, 1997, Plaintiff was notified that her Merit Board hearing was continued until January 14, 1998.[26] (December 19, 1997 Letter from Nate Madsen to Shannon, Ex. 11A to Def.'s 56.1.) Plaintiff failed to appear at the Merit Board hearing on January 14, 1998, which she attributed to lack of notice, (Pl.'s Decl. ¶ 26), and in her absence the Merit Board conducted a "prove-up" of the charges against her. (Transcript of Merit Board Hearing, Ex. 12 to Def.'s 56.1.) On April 15, 1998, the Merit Board issued its ruling, finding that on January 7, 1997, Plaintiff had disobeyed a direct order and that on June 12, 1997, Shannon used a Cook

---

[25]     The parties do not provide the date this questionnaire was submitted. In addition, the charge number listed on the questionnaire is 1997CF1175; the court assumes that this is a typographical error and should read 1998CF1175, which is the underlying charge in this lawsuit.

[26]     Plaintiff disputes receiving this notice (Pl.'s Decl. ¶ 26), but the court notes that the record includes an affidavit of personal service signed by Robert Glynn and witnessed by David Maher, both investigators with the Merit Board. (Affidavit of Personal Service Merit Board Subpoena, Ex. 11B to Def.'s 56.1.)

County phone for personal use.[27] (Merit Board Order, Ex. 14 to Def.'s 56.1.) As a result of this finding, the Merit Board ordered that Plaintiff be terminated for cause effective termination on October 16, 1997, the date of the initial pre-suspension hearing. (*Id.*) Plaintiff denies that she was discharged on April 15, 1998 and instead maintains that she was terminated on October 22, 1997 by a representative of the Department at her IDHR fact-finding hearing. (Pl.'s Decl. ¶ 24.)

After learning that she was terminated from the Sheriff's Department, which Plaintiff claims occurred on October 22, 1997, Shannon "immediately" filed for Public Aid and unemployment benefits.[28] (*Id.* ¶ 24.) Shannon emphasizes that prior to April 15, 1998, the date Defendant claims to have terminated Shannon, these agencies confirmed that she was no longer employed by the Sheriff's Department. (*Id.* ¶ 25.) Plaintiff also claims that the Department of Employment Security found that she was terminated for reasons other than misconduct.[29] (Department of Employment Security Appeals Division, Referee's Decision, Ex. 7 to Pl.'s 56.1.) Plaintiff acknowledges that she informed Public Aid and the Department of Employment Security that she "could not perform the work that fell within [her] job description" at the Department. (*Id.*) She asserts, further, that based on her statement and a medical report, she was awarded Social Security Insurance (SSI)

---

[27]     Defendant does not address the discrepancy between the charge of misconduct, which alleged that Shannon plugged a personal phone into a County phone line, and the Merit Board's ultimate finding of fact, which states that she violated a Department regulation by using a County phone to make personal calls.

[28]     Defendant objects to some of Shannon's assertions regarding her Public Aid and unemployment benefits claims as hearsay but, for the reasons explained below, the dispute concerning whether Plaintiff was terminated on October 16, 1997 or merely suspended without pay on that date is not material.

[29]     Specifically, Department of Employment Security Referee's found in favor of Plaintiff on this issue because Defendant has the burden of proving misconduct and did not appear at the hearing. (Department of Employment Security Appeals Division, Referee's Decision, Ex. 7 to Pl.'s 56.1.)

14

benefits.[30]  (*Id.*)

## DISCUSSION

Shannon alleges that she was discriminated against by Defendant under the ADA and Title VII. Specifically, Shannon claims that Defendant discriminated against her based on her arthritic and debilitated knee, by suspending her without pay. Plaintiff also asserts that Defendant failed to accommodate her disability in violation of the ADA. Lastly, Plaintiff alleges that Defendant violated Title VII when he suspended her without pay in retaliation for a charge of discrimination she had filed against Defendant several months earlier. Defendant now moves for summary judgment on all of Plaintiff's claims.

A motion for summary judgment will be granted only if no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The court must consider the evidence and draw all reasonable inferences in favor of the nonmoving party. *Gennington v. Caterpillar, Inc.*, 275 F.3d 654, 658 (7th Cir. 2001). The court's function is not to weigh the evidence but to determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party must do more than demonstrate a factual dispute, but must offer evidence sufficient to support a verdict in her favor. *Basith v. Cook County*, 241 F.3d 919, 926 (7th Cir. 2001). When factual matters are in dispute, the court is "obligated to credit [plaintiff's] version of events over the defendants." *Hostetler v. Quality Dining*, 218 F.3d 798, 802 (7th Cir. 2000). Employment cases are fact intensive, but that does not mean that the court is required to "scour the record" for factual disputes in an effort to assist the plaintiff avoid summary judgment. *Greer v. Bd. of Ed. of City of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001).

Defendant argues, first, that Plaintiff lacks standing to challenge her 1997 suspension and

---

[30]     Shannon does not provide the date she was awarded SSI benefits or any evidence regarding the benefits determination other than her own declaration.

termination because her 1996 termination was upheld by Illinois courts. In any event, Defendant contends, Plaintiff's ADA claim fails because she was not an "otherwise qualified" individual. Finally, Defendant argues that the facts do not support a claim of retaliation. The court addresses these arguments in turn.

## Does Shannon Have Standing?

Defendant argues, first, that Plaintiff lacks standing to bring this lawsuit because she had been terminated by Defendant before the alleged discrimination took place. The alleged discriminatory act took place on October 22, 1997, after the Illinois Appellate Court's order, dated July 22, 1997, reinstated Shannon's March 14, 1997 termination from the Department. In response, Shannon argues that she has standing because Defendant took no action in reliance on the Appellate Court's order and instead pursued the charges of misconduct against Shannon as if she remained employed.

Defendant suggests that his failure to act on the Illinois Appellate Court's order should not be held against him because the order was stayed. The court is less certain. The record here shows that although the Illinois Supreme Court stayed its mandate on December 16, 1997, pending an application for writ of certiorari to the United States Supreme Court, the Illinois Appellate Court's opinion of July 1997, was not stayed pending appeal to the Illinois Supreme Court. Thus, Defendant has not shown that he was required by the Illinois Appellate Court's order to stay enforcement of Shannon's termination. (*Shannon v. Cook County Sheriff's Merit Board, et al.*, No. 96 CH 3626, (Ill. App. Ct. July 22, 1997), Ex. 20 to Pl.'s 56.1.) In any event, it is undisputed that after the Illinois Appellate Court reinstated Shannon's termination, Defendant nevertheless continued with the disciplinary procedures initiated in June 1997 and maintained Shannon on the payroll. Because it appears from the record that Defendant continued to treat Shannon as an employee, even after the Illinois Appellate Court's order, the court will assume for the purposes of

this decision that Shannon has sustained an injury and has standing to bring her lawsuit.

## Americans with Disabilities Act Claim

A plaintiff seeking to prove discrimination under the ADA must first establish a prima facie case of discrimination: (1) that she is disabled under the ADA definition; (2) that she is otherwise qualified, with or without accommodations, to perform the essential functions of her position; and (3) that she suffered an adverse employment decision because of her disability. *Dvorak v. Mostardi Platt Assocs., Inc.*, 289 F.3d 479, 483 (7th Cir. 2002.) To avoid summary judgment, Shannon must establish a genuine issue of material fact regarding each element of the prima facie case. *DeLuca v. Winer Industries, Inc.*, 53 F.3d 793, 798 (7th Cir. 1995).

Defendant challenges Plaintiff's showing on each prong of the prima facie case. The court will address only the second one. To meet this second element, Plaintiff must establish that she is qualified for the deputy sheriff position, that is, that she is capable of performing "the essential functions of the position held or desired, with or without accommodation." *Lawson v. CSX Transportation, Inc.*, 245 F.3d 916, 929 (7th Cir. 2001). The evidence is undisputed on this issue: Shannon cannot perform the essential functions of the deputy sheriff position. Shannon believes that she has met her burden on this element by showing she was capable of performing one of the essential functions performed by a deputy sheriff--inputting information into a computer in the warrant department. Both sides agree, however, that essential functions of the deputy sheriff position include: "[c]ourtroom and building security along with the safe transportation of prisoners to and from the courtroom." (Def.'s 56.1 ¶ 28.) It is also undisputed that as a result of her knee surgery in 1996, Shannon is unable to transport prisoners to and from the courtroom, to provide security for the courtroom, go up and down the escalators, to search people as they come through the metal detectors, or to make arrests. (Def.'s 56.1 ¶ 29.)

Plaintiff claims that she is qualified under the ADA because, in her view, Defendant could

accommodate her by assigning to the warrant department full time, a position she previously held, which requires her to input information into a computer. 42 U.S.C. 12111(8) (an employee is qualified if "with or without reasonable accommodation, [she] can perform the essential functions of the employment position that [she] holds or desires"). The Seventh Circuit has stated, however, that "the fact that restructuring is feasible, in itself, is not persuasive evidence one way or that other that a function is essential to a job." *Basith*, 241 F.3d at 930. Whether or not Defendant had taken certain steps in the past, the law is clear that an employer is not required to create a new position to accommodate a disabled employee. *Watson v. Lithonia Lighting*, 304 F.3d 749, 752 (7th Cir. 2002) (ADA did not require defendant to create a new position, comprised of certain duties that the disabled employee could perform, when the employee was unable to perform her former position).

In further support of her argument that she is a qualified individual because she can perform one essential function of the deputy sheriff position, Shannon cites *Pals v. Schepel Buick & GMC Truck, Inc.*, 220 F.3d 495, 498-99 (7th Cir. 2000). In that case, defendant challenged the jury verdict in favor of plaintiff, arguing on appeal that plaintiff was not a "qualified individual with a disability" under the ADA because an accident at home left him unable to walk and therefore unable to perform one essential function of his job, to physically inspect cars. *Id.* The court determined that a reasonable jury could find that this function was not essential or important to plaintiff's position as a used car manager because plaintiff had delegated this duty to other employees for years prior to his injury. *Id.* Plaintiff Shannon's case differs. In contrast to Pals, who was able to perform all essential functions except one, Plaintiff Shannon acknowledges being *unable* to do all the essential functions except one. She does not even suggest that her employer deemed the listed essential functions as unimportant.

Defendant does not dispute that entering information into a computer is one of the essential functions of a deputy sheriff, but argues that this one function does not make Shannon a qualified employee. The court agrees. Plaintiff does not establish that she is a qualified employee by

18

demonstrating that she can perform one of many essential functions. *Cf. Basith*, 241 F.3d at 929 (even though the essential function that plaintiff was unable to perform comprised a small part of entire position, plaintiff was still deemed unqualified for the position because the function was essential). Because Plaintiff admits that she is unable to perform several essential functions, the court grants Defendant's motion for summary judgment on Shannon's ADA discrimination claim and declines to discuss the remaining elements.[31]

Although the issue was not raised by Defendant, the court notes that Shannon's successful application for Social Security disability benefits provides a further reason for concluding she is not an "otherwise qualified" individual. *See Lee v. City of Salem*, 259 F.3d 667, 672-78 (7th Cir. 2001) (citing *Cleveland v. Policy Mgmnt. Sys. Corp.*, 526 U.S. 795, 119 S.Ct. 1597 (1999)). The Social Security Act is intended to "provide an income to disabled persons who cannot work", while "the ADA protects the employment rights of those who can." *Lee*, 259 F.3d at 672. Although an "application for and award of benefits is not dispositive of an ADA claim," *Lee*, 259 F.3d at 674, an individual who has sworn that he is "completely disabled and unable to work," as required for Social Security benefits, must provide a sufficient explanation for that statement to defeat summary judgment on his ADA claim. *Id.* at 674 (citing *Cleveland*, 526 U.S. at 807). Plaintiff Shannon appears unaware of any inconsistency between her successful SSI application and her claim in this

_____

[31]      Shannon also argues that she is within the class of protected persons under the Illinois Human Rights Act (IHRA), which makes it unlawful to discriminate against a person with a handicap. 775 ILCS 5/2-102(A), 1-103 (Q). The court notes that Shannon provides a limited discussion of the IHRA only in footnote five of her brief in opposition to summary judgment. Similar to the ADA definition of a disability, handicap is defined under the IHRA as "a disabling characteristic that is unrelated to the person's ability to perform the duties of a particular job or position. . . ." 775 ILCS 5/1-103 (I). For reasons discussed above, Shannon does not qualify under the IHRA because her disability is not unrelated to her ability to perform her duties. Shannon acknowledges that her handicap or disability prevents her from doing the vast majority of the essential functions of her position. Her handicap is, thus, directly related to her ability to perform the duties of a deputy sheriff.    To the extent that Shannon alleges a claim under the IHRA, the court grants summary judgment on this claim as well, despite Defendant's failure to address this claim in his brief.

case. Indeed, she asserts that she received SSI benefits in part because of her statement that she could not perform the work that fell within her job description. (Pl.'s Decl. ¶ 25.) She offers nothing that would reconcile this sworn statement with her current assertion that she is a "qualified individual."

Lastly, Shannon argues that Defendant violated the ADA by failing to accommodate her disability. Defendant argues that any such claim is barred by Judge Andersen's 1998 decision dismissing a failure to accommodate claim as inconsistent with her own factual allegations. In any event, Shannon did not include this accommodation claim in her underlying EEOC charge. The Seventh Circuit has held that a plaintiff is barred from raising a claim absent from her EEOC charge in the district court, "unless the claim is reasonably related to one of the EEOC charges." *Green v. National Steel Corp., Midwest Div.*, 197 F.3d 894, 898 (7th Cir. 1999). Because "a failure to accommodate claim is separate and distinct from a claim of discriminatory treatment under the ADA," Plaintiff was required to include her ADA accommodation claim in the EEOC charge to properly assert the claim in the district court. *Id.* Thus, the court grants summary judgment on plaintiff's ADA accommodation claim because it was not included in her EEOC charge.

## Retaliation Claim

Because Shannon has admitted she is unable to perform the duties of the deputy sheriff position, the position she seeks in this lawsuit, there is some question as to what, if any, damages she would be entitled to if she were successful in pursuing her retaliation claim. The court, however, does not need to reach this issue because, as set forth below, Shannon is unable to establish a prima facie case of retaliation.

In *Stone v. Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002), the Seventh Circuit explained that a plaintiff claiming retaliation can defeat summary judgment through one of two methods: (1) the direct evidence approach; or (2) the *McDonnell Douglas* method adapted to

the retaliation context. *Id.* Shannon has offered no direct evidence of retaliation. *Radue v. Kimberly Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000) ("[d]irect evidence essentially requires an admission by the decision-maker that his actions were based on the prohibited animus"). Although Plaintiff alleged that she was informed by other deputies that her supervisor wanted her fired, this is not sufficient to create a genuine issue of fact because the statements set forth in Shannon's declaration are hearsay. *Winskunas v. Birnbaum*, 23 F.3d 1264, 1268 (7th Cir.1994) (hearsay incapable of creating a genuine issue of material fact). Even if admissible, the deputies' statements would not be sufficient, as they make no reference to Plaintiff's complaint of discrimination. In fact, Plaintiff herself appears to believe Chief Collins was hostile to her because Shannon had reported misconduct on Collins' part, not because of Shannon's previous charge of discrimination.

Nor has Plaintiff met the burden of establishing a prima facie case of retaliation under the burden shifting approach, which requires a showing that: (1) she engaged in a statutorily protected activity; (2) she met her employer's expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than any other similarly situated employee who did not engage in such protected activity. *Stone*, 281 F.3d at 644; *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002). Shannon has offered no evidence regarding the final element of a prima facie case; she did not identify any similarly situated employee, who did not engage in a protected activity, but was treated more favorably than she. In order to make this showing a plaintiff must typically establish "that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Radue*, 219 F.3d at 618. In this case, Shannon has failed to name another employee, let alone establish that they were similarly situated. The mere fact that Shannon was the only employee suspended with pay in a twelve month period is clearly insufficient to meet this burden.

Shannon's brief makes no mention of *Stone*, but argues instead that she can establish three elements of a prima facie case identified in an earlier formulation, one the Seventh Circuit has followed at least twice since *Stone* was published. *See Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1008 (7th Cir. 2002); *Frazoni v. Hartmax Corp.*, 300 F.3d 767, 772-73 (7th Cir. 2002). Under this earlier formulation, Plaintiff can defeat summary judgment by showing that "(1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action." *McKenzie v. Illinois Dept. of Trans.*, 92 F.3d 473, 483 (1996). This approach is of no assistance to Shannon, however. Although Shannon engaged in a protected activity (filing the charge of discrimination on June 19, 1997) and suffered an adverse employment action (having her suspension altered from paid to unpaid status on October 22, 1997), she has not proven the third element of a causal connection.[32]

To establish a causal link "between a protected activity and an adverse employment action, a plaintiff must demonstrate that the employer would not have taken the alleged adverse action 'but for' the plaintiff's protected activity." *Wells*, 289 F.3d at 1008. Shannon argues that she has made

_____

[32]     Shannon alleges that on October 22, 1997 she learned that she was terminated, not that her suspension status was altered from paid to unpaid. The court need not decide which took place because either one would be construed as an adverse employment action. *Herrnreiter v. Chicago Housing Authority*, 315 F.3d 742, 744 (7th Cir. 2002) (an actionable adverse employment action includes "[c]ases in which the employee's compensation, fringe benefits, or other financial terms of employment are diminished, including, . . . termination of employment."). In addition, Shannon attempts to add a number of protected activities and adverse employment actions to support her retaliation claim. The court notes that these unrelated claims are not included in Shannon's underlying charge of discrimination, 1998CF1175, and will not be considered by the court. As the Seventh Circuit has explained, a claim of discrimination not included in the underlying EEOC charge may not be presented in a complaint before the court. *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 920 (7th Cir.2000) (citing *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir.1994)); *Weiss v. Coca-Cola Bottling Co. of Chicago*, 990 F.2d 333, 337 (7th Cir.1993) ( "allegations not contained in an EEOC charge cannot be contained in the complaint. . . .") Thus, the only retaliation claim properly before this court is whether Plaintiff was subject to retaliation for filing her June 19, 1997 charge of discrimination when the Defendant changed her suspension status from paid to unpaid (or terminated her) on October 22, 1997. (Charge of Discrimination, 1998CF1175, Ex. 2 to Def.'s 56.1, at 1.)

22

the necessary showing of a causal link because she has demonstrated that: when she returned to work in 1996 Defendant dropped her pay grade; eliminated her benefits; placed her in a basement job Plaintiff found humiliating; made it difficult for her to access the bathroom; failed to provide her with an opportunity to be heard regarding the January and June incidents; and notified her of her termination at the hearing concerning a separate discrimination charge. In addition, Plaintiff argues that she was a productive and valuable employee who was not fired for her job performance. Assuming all of Plaintiff's allegations are true, even though they are disputed by Defendant, these incidents are not relevant in establishing a causal link between Shannon's filing of a charge of discrimination with the change in her suspension status because they do not establish a "but for" connection. In fact, many of the circumstances of which she complains occurred prior to June 1997 and therefore could not have represented retaliation for that charge.

The only relevant causal link plaintiff can demonstrate is the temporal proximity between her June 1997 charge and the adverse employment action. As the court explained in *Stone*, 281 F.3d at 644, "mere temporal proximity" is rarely sufficient to survive summary judgment on the issue of causation. Courts may infer a causal link, however, when the adverse employment action follows very closely in time after the protected expression. *McClendon v,. Indiana Sugars, Inc.*, 108 F.3d 789, 796-97 (7th Cir. 1997) ("causal nexus sufficiently demonstrated when the time period between the filing of a compliant and the adverse action was one day or one week"); *Holland v. Jefferson National Life Ins. Co.*, 883 F.2d 1307, 1314-15 (7th Cir. 1989) (one week between protected activity and adverse employment action was found sufficient to demonstrate causal link). As the temporal distance between the two events increases, "it is less likely that there is a causal link between the two events." *McKenzie*, 92 F.3d at 485. In fact, a "substantial time lapse between the two events is counter-evidence of any causal connection." *Johnson v. University of Wisconsin-Eau Claire*, 70 F.3d 469, 480 (7th Cir. 1995). Here, there was a four-month gap between Shannon's protected expression on June 19, 1997 and the adverse employment action

23

on October 22, 1997. *See Sauzek*, 202 F.3d at 918-19 (finding a three month gap between protected activity and adverse employment action too long to raise inference of discrimination); *Filipovic v. K & R Express Sys. Inc.*, 176 F.3d 390, 398-99 (7th Cir. 1999) (four months between the two events found to be too long). More importantly, the adverse action that took place in October 1997 flowed from an investigation of incidents that occurred in the days and months before Plaintiff filed her charge. The undisputed facts reveal that it was those earlier incidents, not Plaintiff's decision to challenge her pretermination suspension, that resulted in her removal from the payroll in October 1997.

Ignoring these circumstances and instead focusing on the time frame, Shannon argues that Defendant investigated the charges against her and made the decision to terminate her shortly after she filed her charge of discrimination. She notes that Defendant conducted six interviews, completed an investigation report, and submitted a recommendation that Shannon be terminated in the two months following her filing a charge of discrimination on June 19, 1997. The court notes, first, that this investigation is not the adverse employment action complained of by Shannon in the underlying charge and thus, as stated above, it is not properly before the court. There is a significant question whether the adverse action of which Plaintiff complains – the investigation – is actionable. *Compare Rabinovitz*, 89 F.3d at 488 (an adverse employment action is not material for purposes of a Title VII retaliation claim *unless the action alters the terms and conditions of the employee's employment in such a way as to be "more disruptive than a mere inconvenience or an alteration of job responsibilities") with Herrnreiter*, 315 F.3d 742, 745 ("retaliation, to be actionable under Title VII . . . [does not have] to involve an adverse employment action.") In any event, Shannon had already been suspended with pay at the time the investigation took place. The investigation by Defendant into the charges had no impact on her employment. The October 22, 1997 decision clearly did have an impact, but that decision, as noted, was a product of the incidents that the Merit Board investigated, not Plaintiff's charge.

24

## CONCLUSION

The court finds no genuine issue of material fact regarding Shannon's claims under the ADA or Title VII and grants summary judgment (Doc. No. 24-1) for Defendant on all Plaintiff's claims.

ENTER:

Dated:   February 18, 2003

REBECCA R. PALLMEYER
United States District Judge