# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 252 | **DATE** | 12/11/2003 |
| **CASE TITLE** | Archietta Shannon vs. Michael Sheahan | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter memorandum opinion and order. Shannon's motion to reconsider and to amend or alter judgment pursuant to Rule 59(e) (Docs. No. 41-1, 41-2, and 41-3) is granted in part and denied in part. Plaintiff has leave to file a brief in support of her retaliation claims within 21 days. Defendant's response, if any, shall be submitted 14 days thereafter. The parties are again encouraged first to attempt settlement.

(11) ■ [For further detail see order attached to the original minute order.]

Number of notices: 3
Date docketed: DEC 12 2003
Date mailed notice: 12/11/2003
Document Number: 44

Notices mailed by judge's staff. ✓

Courtroom deputy's initials: ETV

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ARCHIETTA SHANNON, )
 )
        Plaintiff, )
 )
v. ) No. 01 C 252
 )
MICHAEL SHEAHAN, ) Judge Rebecca R. Pallmeyer
SHERIFF OF COOK COUNTY, )
 )
        Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Archietta Shannon ("Shannon") filed this lawsuit against her former employer, the Sheriff of Cook County, on January 12, 2001, alleging retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, et seq. Specifically, Shannon alleged that she was suspended without pay for filing complaints of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR"). In addition, she claimed that Defendant discriminated against her based on her disability, rheumatoid arthritis, and failed to accommodate her disability, contravening the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. On February 18, 2003, this court granted Defendant's motion for summary judgment on each of Plaintiff's claims. See Shannon v. Sheahan, No. 01 C 252, 2003 WL 366584 (N.D. Ill. Feb. 18, 2003). On March 4, 2003, Shannon filed a motion to amend or alter this court's judgment pursuant to Federal Rules of Civil Procedure 59(e).

For the reasons set forth below, Plaintiff's motion is granted in part and denied in part.

## PROCEDURAL AND FACTUAL BACKGROUND

The court will assume the reader's familiarity with the court's earlier opinion but will provide pertinent background information. It is undisputed that Plaintiff began working for the Cook County Sheriff's Department ("Department") in June 1987 as a "deputy sheriff" in the Court Services Division ("Division") of the Cook County Sheriff's Office. (Defendant's Statement of Uncontested Facts Pursuant to Local Rule 56.1 (hereinafter, "Def.'s 56.1") ¶ 2; Plaintiff's Response to Defendant's Statement of Facts (hereinafter, "Pl.'s Resp. 56.1") ¶ 2.) As of August 29, 1995,

Plaintiff "was assigned as a deputy to a courtroom in the Daley Center."[1] (Plaintiff's Statement of Additional Facts (hereinafter, "Pl.'s 56.1.") ¶ 1.) It is undisputed that the essential functions of a Courtroom Deputy Sheriff include maintaining courtroom and building security and ensuring the safe transportation of prisoners to and from the courthouse. (Def.'s 56.1 ¶ 28; Pl.'s Resp. 56.1 ¶ 28.) According to a 1986 Courts Division Bulletin, the Courtroom Deputy Sheriff "is the enforcer of all rules and orders that are given by the Judge." (Ex. 25 to Def.'s 56.1 ¶ III.D.) The Courtroom Deputy Sheriff must "maintain quiet in the courtroom[;] handle prisoners, jurors and spectators; maintain general security in the courtroom[;] protect the judge and other Court Officers; and respond properly to emergency situations, if they arise." (*Id.*) At an unspecified time prior to her injury, Shannon spent approximately six months entering warrants information into a computer. (Pl.'s Decl. ¶ 13.) Shannon also served as a union steward from 1987 to 1995, which required her to assist fellow deputies with management disputes. (Pl.'s 56.1 ¶ 7.)

On August 30, 1995, Shannon injured both her right ankle and right knee at work. (Def.'s 56.1 ¶ 21.) Following this injury, she went on "injured on duty" status. (Def.'s 56.1 ¶ 26.) On January 16, 1996, while still on leave from her injury, Shannon underwent arthroscopic surgery on her injured right knee. (Def.'s 56.1 ¶ 23.) The surgery was unsuccessful, and Shannon remains unable to walk without the assistance of a cane or walker. (Pl.'s 56.1 ¶ 4.) She maintains that her injury has substantially limited her ability to walk. (Plaintiff's Declaration (hereinafter, "Pl.'s Decl."), Ex. 1 to Pl.'s 56.1 ¶ 3.) Shannon is capable of entering warrant information into a computer, but remains unable to perform other functions of a Courtroom Deputy Sheriff in the Division, including transporting prisoners, providing security for the courtroom, traveling up and down escalators,

---

[1] The parties employ variations on three terms in referring to Plaintiff's employment: "deputy sheriff in the Court Services Division," "deputy to a courtroom," and "Courtroom Deputy Sheriff." The parties seem to agree that the latter two are synonymous. As discussed *infra*, however, Defendant essentially contends that all three terms are synonymous, while Plaintiff asserts that Courtroom Deputy Sheriff (or "deputy to a courtroom") is but one position a deputy sheriff in the Division can hold.

sitting at the front desk and searching people as they pass through the metal detectors, and making arrests. (Def.'s 56.1 ¶ 29-30; Pl.'s Resp. 56.1 ¶ 29-30; Plaintiff's Deposition (hereinafter, "Pl.'s Dep."), Ex. 26 to Def.'s 56.1, at 85-86.)

In November 1996, Shannon returned to work at the Department. (Pl.'s 56.1 ¶ 11(c).) She was restricted to a sitting position for the remainder of her employment with the Department. (Pl.'s 56.1 ¶ 5.) Defendant assigned her a new sedentary position, which Defendant claims accommodated her physical restrictions, (March 8, 1996 Letter from Charles Tucker to Plaintiff, Ex. 23 to Def.'s 56.1), recording information about packages delivered through the freight tunnel in the basement of the County Building while seated at a desk. (Pl.'s 56.1 ¶ 9; Pl.'s Decl. ¶ 11.) It is undisputed that Defendant denied Plaintiff's request to transfer to the "position in the warrant department" which she had held previously because Defendant had already created a position for her in the freight tunnel. (Pl.'s 56.1 ¶ 11(d).) Shannon claims that her new supervisor as of November 1996, Chief Loretta Collins, wanted Shannon terminated because Shannon had filed a request for "injured on disability" status after Collins "bumped" Shannon in Collins's office during a disagreement and because she reported Collins to the County for misuse of a County vehicle and for falsification of time sheets, although she fails to provide dates for these incidents. (Pl.'s Decl. ¶ 18.) Without specifying the charges or the exact date, the parties agree that in November 1996, Plaintiff filed a charge of discrimination with the IDHR and the EEOC.[2] (Pl.'s 56.1 ¶ 8.)

On June 17, 1997, Shannon was sent home from work and suspended with pay pending a Department investigation regarding two complaints of misconduct that allegedly took place on January 7 and June 12, 1997. (Defendant's 56.1 ¶ 4; June 17, 1997 Memorandum from Robert Goldsmith, Director Internal Affairs, to Shannon, Ex. 3 to Def.'s 56.1.) On June 17, 1997, Shannon was suspended with pay pending an Internal Affairs investigation into the charges of misconduct.

---

[2] Neither party has provided a copy of this charge or described Shannon's allegations.

(Def.'s 56.1 ¶ 4; June 17, 1997 Memorandum from Robert Goldsmith, Director of Internal Affairs, to Shannon, Ex. 3 to Def.'s 56.1.)

On June 19, 1997, Plaintiff filed a second charge of discrimination with the IDHR and with the EEOC alleging that her suspension of June 17, 1997 was a retaliatory act by Defendant in response to her previous discrimination charge filed in November 1996. (Def.'s 56.1 ¶ 6; Pl.'s Resp. to Def.'s 56.1 ¶ 6.) Shannon filed a third charge of discrimination on November 11, 1997. (Charge of Discrimination, 1998CF1175, Ex. 2 to Def.'s 56.1.) In that charge, which is the underlying charge in this lawsuit, Shannon alleged that Defendant discriminated against her based on her disability and retaliated against her for filing her June 19, 1997 charge of discrimination by changing her suspension from paid to unpaid on October 22, 1997, but did not allege that Defendant had failed to accommodate her disability. (Id.)

After learning that she was terminated from the Sheriff's Department, which Plaintiff claims occurred on October 22, 1997, Shannon "immediately" filed for Public Aid and unemployment benefits. (Id. ¶ 24.) Plaintiff acknowledges that she informed Public Aid and the Department of Employment Security that she "could not perform the work that fell within [her] job description" at the Department. (Id. ¶ 25.) She asserts, further, that based on her statement and a medical report, she was awarded Social Security Insurance (SSI) benefits. (Id.)

## DISCUSSION

I.  **Standards for Motion to Alter or Amend Judgment**

Under Rule 59(e), any substantive motion that challenges the merits of a district court's decision must be served within ten days after the entry of a judgment. FED. R. CIV. P. 59(e). Such a motion will be granted "if there exists 'a manifest error of law or fact,' so as to enable 'the court to correct its own errors and thus avoid unnecessary appellate procedures.'" Divane v. Krull Elec. Co., 194 F.3d 845, 848 (7th Cir. 1999), quoting Moro v. Shell Oil Co., 91 F.3d 872, 876 (7th Cir.

4

1996). Motions for reconsideration also serve "to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus.*, 90 F.3d 1264, 1269 (7th Cir. 1996). Such a motion

> performs a valuable function where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court. Such problems rarely arise and the motion to reconsider should be equally rare.

Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191 (7th Cir. 1990) (citation omitted).

Shannon now claims that this court erred in granting summary judgment to Defendant. Specifically, she contends the court was mistaken in concluding that (1) she was not qualified for the position she sought, (2) her accommodation claim was barred because it was not included in her EEOC charge, and (3) only one of Plaintiff's retaliation claims was properly before the court. (Plaintiff's Motion to Reconsider and To Amend or Alter Judgment (hereinafter, "Pl.'s Motion") ¶¶ 2-13.) The court will address each argument in turn.

## II. Was Shannon Qualified for the Position She Is Seeking?

Shannon claims that she is qualified for the position she is seeking, and that this court erred in holding to the contrary. (*Id.* ¶¶ 2-8.) A plaintiff seeking to prove discrimination under the ADA must first establish a prima facie case of discrimination showing (1) that she is disabled under the ADA, (2) that she is otherwise qualified, with or without accommodations, to perform the essential functions of her job, and (3) that she suffered an adverse employment decision because of her disability. *Dvorak v. Mostardi Platt Assocs., Inc.*, 289 F.3d 479, 483 (7th Cir. 2002.) To avoid entry of summary judgment against her, Shannon was required to establish a genuine issue of material fact regarding each element of the prima facie case. *DeLuca v. Winer Industries, Inc.*, 53 F.3d 793, 798 (7th Cir. 1995).

5

In ruling on Defendant's summary judgment motion, this court determined that Shannon had not met her burden with regard to the second prong–being otherwise qualified to perform the essential functions of the desired position. Specifically, Shannon failed to present evidence that she is capable of performing "the essential functions of the position held or desired, with or without accommodation." *Lawson v. CSX Transportation, Inc.*, 245 F.3d 916, 929 (7th Cir. 2001). In the instant case, this court's conclusion was premised on the assumption that Plaintiff was seeking the position of Courtroom Deputy Sheriff in the Courtroom Services Division and she was unable to perform all of the essential functions of that position, including courtroom security and transportation of prisoners.

Plaintiff now claims that this analysis was too broad: "[d]eputy sheriffs are assigned to a number of different assignments that have a number of different 'essential functions.' Providing security for courtrooms and transporting prisoners are simply not functions, much less essential functions, of all deputy sheriff assignments." (Pl.'s Motion ¶ 6.)[3] She maintains that this "broad definition" of deputy sheriff improperly required Plaintiff to "demonstrate to the Court that she could perform all of the essential functions of all assignments that a deputy sheriff might be assigned to." (Pl.'s Motion ¶ 7.) According to Plaintiff, this is similar to requiring a manager, engineer, or analyst in a large corporation to demonstrate that she could perform all of the essential functions of each person in the organization who holds that title. (*Id.*) Instead, she maintains that there are at least three distinct "positions" within the Division to which a deputy sheriff can be assigned: Courtroom Deputy Sheriff, "warrants position," and "basement position," and implies that she is seeking only the latter two positions, which coincidentally do not require the ability to provide courtroom/building security or to transport prisoners. (Pl.'s Motion ¶ 6; Supplemental Brief in Support of Motion to

---

[3] To support this contention, Plaintiff cites her declaration dated March 4, 2003. (*Id.*) A new declaration by a party, however, logically cannot qualify as "newly discovered evidence," *Caisse Nationale*, 90 F.3d at 1269, and this court will not consider this declaration.

6

Reconsider and to Amend or Alter Judgment (hereinafter, "Pl.'s Supp. Brief"), at 1-2.) She complains that it was "unfair, and contrary to common sense and the purposes of the ADA" for this court to decide that her injury "prevents her from performing tasks that she never had to perform, and were not necessary (much less essential) to the position she was seeking," i.e., the position entering warrants information into a computer. (Pl.'s Motion ¶ 8.) Plaintiff did not present this legal theory in her brief opposing Defendant's motion for summary judgment and is therefore arguably barred from raising this argument in her motion for reconsideration. *See Bally Export Corp. v. Balicar, Ltd.*, 804 F.2d 398, 404 (7th Cir. 1986) ("[A] motion for reconsideration is an improper vehicle to introduce evidence previously available or to tender new legal theories.") Even if the argument were properly considered by the court, it fails because Plaintiff has presented no evidence that her six-month assignment entering warrants information into a computer or her post-injury assignment recording delivery information in the basement of the County Building constituted actual "positions" within the Department that would excuse certain deputy sheriffs like Plaintiff from being capable of providing courtroom security and transporting prisoners.

First, Shannon has offered neither written descriptions nor any other evidence to show that her "warrants" and "basement" assignments constitute distinct positions. No evidence in the record supports the notion that "warrants position" and "basement assignment" are actual job titles. Quite the contrary, Cook Country Sheriff Courts Division Bulletin No. 3532 (1986) titled "Duties of a Courtroom Deputy" arguably uses the terms "Courtroom Deputy," "Courtroom Deputy Sheriff," and "Deputy Sheriff" interchangeably. (Ex. 25 to Def.'s 56.1.)[4] In addition, the Department's website

---

[4] Section III.D of the 1986 Courts Division Bulletin states:

The Courtroom Deputy Sheriff . . . is the enforcer of all rules and orders that are given by the Judge. Depending on the type of cases handled in a particular courtroom, there may be one or more Deputy Sheriffs assigned. The Deputy Sheriff (s) will maintain quiet in the courtroom[;] handle prisoners, jurors and spectators;

(continued...)

states that "Deputy sheriff[]s assigned to the Courtroom Services Division . . . are responsible for all aspects of court security, which includes prisoner control and courtroom decorum as well as security at all courthouse entrances." http://www.cookcountysheriff.org/court/index.html. These job descriptions satisfy the court that the Department requires that *all* deputy sheriffs—even those who are not assigned to a courtroom—be capable of providing courtroom security and transporting prisoners.

Although Plaintiff had brief assignments in the basement and working on warrants, these assignments were obviously merely temporary in nature. Plaintiff admitted that her work in the basement "was not a real position" and "did not exist before I was assigned or after I was fired." (Pl.'s Decl. ¶ 11.) The mere fact that Defendant permitted Shannon to sit in the basement of the courthouse does not mean that it created a new permanent position for her. Instead, it is clear that Defendant provided these working conditions to her as a temporary measure due to her medical restrictions. Our Court of Appeals has observed that employers sometimes "establish a pool of light-duty positions (or other subsets of the full tasks) suited to employees recovering from injuries." *Watson v. Lithonia Lighting*, 304 F.3d 749, 752 (7th Cir. 2002). The ADA encourages such behavior by employers. *Id.* This does not mean that the employer must allow the employee to occupy the light-duty assignment indefinitely. *Id.*; *see also Hendricks-Robinson v. Excel Corp.*, 154

---

⁴(...continued)
maintain general security in the courtroom[;] protect the Judge and other Court Officers; and respond properly to emergency situations, if they arise. The Deputy Sheriff is generally given broad discretion in how these duties and functions are performed, however, there are certain general policies and guidelines to be followed which are described in detail in the subsequent paragraphs.

The Deputy shall promptly submit all necessary reports and forms required by his supervisor in order to keep accurate records and details of the departmental functions of the Court.

(Ex. 25 to Def.'s 56.1 ¶ III.D.)

F.3d 685, 696 (7th Cir. 1998); *Dalton v. Suburu-Isuzu Automotive, Inc.*, 141 F.3d 667, 680 (7th Cir. 1998). In this case, Defendant was under no obligation to permit Shannon to remain in her post-injury light-duty position (recording delivery information) or to provide her another light-duty position (e.g., entering warrant information into a computer) indefinitely.

Likewise, Shannon has offered no evidence that her six-month assignment entering warrant data into the computer prior to her injury represented an actual "position." As mentioned *supra*, Defendant did not dispute (and thus, admitted) Plaintiff's factual assertion that he denied her request in November 1996 to transfer to a "position in the warrant department," which she had held previously and for which she was qualified.[5] (Pl.'s 56.1 ¶ 11(d).) Nevertheless, Plaintiff cannot use Defendant's admission of these *facts* to draw the *legal* conclusion that Defendant considered Plaintiff's assignment entering warrant data to be a bona fide "position." *Cf. Greer v. Bd. of Educ. of City of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001) (disapproving plaintiff's 56.1 submissions that were "generalized self-serving legal conclusions, rather than particularized statements of fact.").

It is clear, then, that the only bona fide position Shannon can be seeking through this lawsuit is deputy sheriff in the Court Services Division, a job for which one must be able to transport prisoners and provide courtroom security, essential functions that Shannon was unable to perform due to her injury. Thus, Shannon did not raise a genuine issue of material fact regarding her ability to perform the essential functions of the job she was seeking.

In a footnote, Plaintiff objects to this court's observation that her application for Social Security benefits is inconsistent with her claim that she was capable of performing the position she sought. Plaintiff correctly notes that Defendant did not raise this argument. (Pl.'s Motion ¶ 8 n.6.)

---

[5] Plaintiff also cites the Declaration of Thomas M. Staunton, dated March 27, 2003 and attached as an exhibit to Plaintiff's Supplemental Brief. (*Id.*) As discussed regarding Plaintiff's March 4, 2003 declaration, this statement does not qualify as "newly discovered evidence," *Caisse Nationale*, 90 F.3d at 1269, and therefore cannot serve as a basis for the court's decision.

9

The court raised the Social Security matter on its own, see Shannon, 2003 WL 366584, at *10, because Plaintiff offered a statement concerning her receipt of disability benefits in the apparent belief that the award of benefits somehow bolstered her claim here. (See Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (hereinafter "Pl.'s Mem."), at 7, citing Pl.'s 56.1 ¶ 16, citing Pl.'s Decl. ¶ 25.) The court simply noted the obvious contradiction between Plaintiff's sworn statements that she is disabled from any work and her insistence that she can perform the essential qualifications of the deputy sheriff position. For the reasons stated *infra*, however, it is clear that, even if one were to ignore her claim for disability benefits, Plaintiff has not shown she is qualified for the position of deputy sheriff.

### III. Was Shannon Entitled to Accommodation?

Shannon also asserts that this court erred when it granted summary judgment to Defendant on her accommodation claim. (Pl.'s Motion ¶¶ 9-11.) First, she argues that her accommodation claim was reasonably related to her discrimination claim, and thus did not need to be addressed separately in her EEOC charge. (*Id.* ¶ 10.) Second, according to Plaintiff, Defendant waived any argument against Shannon's accommodation claim because he did not raise the claim in its brief. (*Id.* ¶ 11.)

First, this court did observe that Plaintiff had failed to raise her accommodation claim in her underlying charge of discrimination, i.e., the November 1997 EEOC charge. Shannon, 2003 WL 366584, at *6, *10. A plaintiff is barred from raising a claim that was not included in her EEOC charge unless the assertion is "reasonably related" to one of the claims in that charge. *Green v. National Steel Corp.*, 197 F.3d 894, 898 (7th Cir. 1999). Notwithstanding the holding in *Green*, Plaintiff maintains that her discrimination and accommodation claims are reasonably related to one another and that one "would reasonably have expected" the latter "to have grown out" of the former. (Pl.'s Motion ¶ 10, citing *Kristufek v. Hussmann Foodservice Co.*, 985 F.2d 364 (7th Cir.

10

1993).) The court need not revisit this question, however, because Plaintiff's accommodation claim fails on the merits.

The ADA forbids employers to discriminate against any "qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a). "Qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). An inability to perform the essential functions of a job means that one is not "qualified," and the employer need not excuse the inability. *Byrne v. Avon Prods., Inc.*, 328 F.3d 379, 380-81 (7th Cir. 2003). This court has already determined that Plaintiff is unable to perform the essential functions of the position she is seeking. Plaintiff is therefore not entitled to any accommodation from her employer under the ADA.

In a footnote to her supplemental brief, Shannon claims that her request to be assigned to the "warrants position" triggered Defendant's responsibility to engage in the "flexible, interactive process" to determine the appropriate accommodation under the circumstances. (*See* Pl.'s Supp. Brief, at 2 n.2, citing *Gile v. United Airlines, Inc.*, 213 F.3d 365, 373 (7th Cir. 2000.) As discussed earlier, Plaintiff has not shown that her brief assignment entering warrants into the computer at some previous time constitutes an available vacant slot. To show that Defendant had an obligation to engage in an interactive process, Shannon must first identify a vacant position and demonstrate that she was qualified for it. *Winfrey v. City of Chicago*, 259 F.3d 610, 618 (7th Cir. 2001). Plaintiff has not met that burden here.

### IV. Did this court improperly exclude protected activities when considering Plaintiff's retaliation claims?

Finally, Shannon argues that the court relied on "an unnecessarily restricted reading of the protected activities covered by" her retaliation claim. (Pl.'s Motion ¶¶ 12-13.) This court determined that Shannon engaged in only one protected activity that arguably could be a basis for

11

a retaliation claim–her filing a charge of discrimination with IDHR on June 19, 1997, because that was the sole activity included in her November 1997 EEOC charge. See *Shannon*, 2003 WL 366584, at *11 & n.32. Shannon claims that she engaged in several other protected activities which led Defendant to retaliate against her, including (1) filing EEOC charges in 1996 and 1997, (2) making complaints regarding Collins's activities and Shannon's assignment to the basement, (3) filing a request for "injured on disability" status after Collins bumped her in her office during a disagreement, and (4) attempting to regain her union steward position after she was injured. (Pl.'s Motion ¶ 12.)[6] She argues that the court should not have disregarded these other activities as bases for her retaliation claim, noting that "Defendant waived any right to rely on the scope of Shannon's retaliation claim in the EEOC charge by failing to raise that argument in its briefs." (*Id.* ¶ 13 n. 7.)

Defendant's own failure to address obvious defenses is disappointing. The court recognizes, however, that it ought not grant summary judgment based on a theory or argument not raised by the moving party, without giving the opponent (in this case, Plaintiff Shannon), an opportunity to respond. See, generally, *Southern Illinois Riverboat Casino Cruises, Inc. v. Triangle Insulation and Sheet Metal Co.*, 302 F.3d 667, 678 (7th Cir. 2002). Shannon has arguably had that opportunity now, by way of her motion for reconsideration. To make the record clear, however, the court will give Plaintiff a further opportunity to respond to the court's concerns, and establish that the protected activities she has identified are appropriate bases for her retaliation claim, despite her failure to identify them in her underlying EEOC charge.

In reopening the record for this purpose, the court cautions Plaintiff that she ought also be

---

[6] Plaintiff cites her summary judgment brief, in which she stated merely that she "made complaints against her supervisor." (Pl.'s Mem., at 11.) In the summary judgment brief, Plaintiff cites her 56.1 statement, which does not mention *any* complaints she made against her supervisor. The only evidence in the record regarding complaints by Plaintiff regarding her supervisor are found in her declaration. (Pl.'s Decl. ¶ 18.)

12

prepared to address the matter of whether there is a causal link between her change in status and these earlier protected activities. Significantly, this court concluded that Plaintiff had not raised a factual issue to suggest a causal link between the adverse employment action (having her suspension altered from paid to unpaid status on October 22, 1997) and her IDHR charge because four months had passed between the two incidents and because her removal from the payroll resulted from an investigation of two complaints of misconduct that allegedly occurred prior to her IDHR filing. *Id.* at *12.

Lack of temporal proximity and the investigation of Plaintiff's alleged misconduct may well also doom Plaintiff's attempt to establish a causal link between these other activities and her change in pay status. The November 1996 EEOC charge came eleven months before the adverse employment action, while the June 1997 EEOC charge was filed on the same day as the IDHR complaint (i.e., four months before the change in pay status, but after the misconduct that was the basis for removing her from the payroll). Plaintiff did not bother to identify the dates on which she complained about Collins's activities and her assignment to the basement and attempted to regain her union steward position. (*See* Pl.'s Decl. ¶ 18.) The court suspects that these events most likely occurred soon after her return to the Department in November 1996, and almost certainly more than four months prior to her October 1997 change in pay status. The record is also silent regarding when Plaintiff filed a request for injury disability after Collins bumped her in her office during a disagreement, generating doubt that she can establish a causal link between this activity and the adverse employment action.

## CONCLUSION

For the foregoing reasons, Shannon's motion to reconsider and to amend or alter judgment pursuant to Rule 59(e) (Docs. No. 41-1, 41-2, and 41-3) is granted in part and denied in part. Plaintiff has leave to file a brief in support of her retaliation claims within 21 days. Defendant's

13

response, if any, shall be submitted 14 days thereafter. The parties are again encouraged first to attempt settlement.

ENTER:

Dated: December 11, 2003

REBECCA R. PALLMEYER
United States District Judge